UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **LAKEIA GREEN,** individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>**POTOMAC FAMILY DINING GROUP OPERATING COMPANY LLC,** *doing business as* **"APPLEBEE'S"**<br><br>Defendant. | Case No. |

## COLLECTIVE ACTION COMPLAINT WITH JURY DEMAND

Plaintiff, LAKEIA GREEN, individually and on behalf of all others similarly situated, by and through her attorneys GOLDBERG FINNEGAN and JTB LAW GROUP LLC, hereby brings this Collective Action Complaint against Defendant, POTOMAC FAMILY DINING GROUP OPERATING COMPANY LLC, doing business as "APPLEBEE'S," and states as follows:

## INTRODUCTION

1.      This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiff, LAKEIA GREEN (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, POTOMAC FAMILY DINING GROUP OPERATING COMPANY LLC, doing business as "APPLEBEE'S", arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2.      Defendant is the nation's sixth largest franchisee of "Applebee's Neighborhood Bar & Grill," ("Applebee's") a nationwide restaurant chain. According to the company's

website,[1] Defendant operates sixty-nine (69) Applebee's locations in Northern Virginia, Southern Maryland, parts of Pennsylvania and West Virginia areas, Southern Virginia, and part of Northern North Carolina.

3.      Plaintiff and similarly situated Servers and Bartenders employed by Defendant were victims of Defendant's common unlawful policies in violation of the FLSA, including:

a.      Requiring Servers and Bartenders to perform work "off the clock" and without compensation before, during, and after their shifts;

b.      Reducing Servers' and Bartenders' hours when computing payroll, thus depriving them of hourly compensation for time they had spent working while clocked into Defendants' time-keeping system;

c.      Paying Servers and Bartenders a reduced "tip credit" hourly rate despite requiring them to share portions of their tips with Defendant's management, in violation of 29 U.S.C. 203(m);

d.      Paying Servers and Bartenders a reduced "tip credit" hourly rate despite requiring them to perform the duties of non-tipped occupations, such as dish washer, which were not related to their duties as Servers or Bartenders. *See* 29 CFR § 531.56(e) ("Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.");

e.      Paying Servers and Bartenders a reduced "tip credit" hourly rate despite requiring them to spend over twenty percent (20%) of their time on activities that were not themselves directed toward producing tips, including bussing and cleaning tables and other parts of the restaurant and washing and restocking dishes and other items. *See* U.S. Department of Labor, Wage and Hour Division Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Mar. 2011) ("DOL Fact Sheet # 15") (providing that "where a tipped employee spends a substantial

---

[1]  https://www.potomacdining.com (last visited October 13, 17)

amount of time (in excess of 20 percent in the workweek) performing related duties, no tip credit may be taken for the time spent in such duties").[2]

    f.    Paying Servers and Bartenders and overtime rate of pay of $3.20 per hour, which Defendant improperly calculated by multiplying their regular hourly rates of $2.13 per hour by 1.5, whereas the proper approach is to multiply the full minimum wage ($7.25 per hour) by 1.5 and then subtract the tip credit of $5.12 per hour ($7.25 - $2.13). *See* 29 C.F.R. § 531.60 ("In accordance with section 3(m), a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer per hour…."); Fact Sheet # 15 ("Where the employer takes the tip credit, overtime is calculated on the full minimum wage, not the lower direct (or cash) wage payment. The employer may not take a larger FLSA 3(m) tip credit for an overtime hour than for a straight time hour.").

4.    As a result, there were many weeks in which Plaintiff and other putative FLSA Collective members did not receive the federally mandated minimum wage, as well as many weeks in which Plaintiff and other putative Collective members did not receive compensation calculated at time-and-a-half (1.5) of their regular rate of pay for all hours worked in excess of forty (40) in a workweek, in violation of the FLSA.

5.    Plaintiff brings this collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all other similarly situated Servers and Bartenders employed by Defendant in the applicable time period, and seek unpaid minimum, overtime, in addition to liquidated damages, fees and costs, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

---

[2] Available at https://www.dol.gov/whd/regs/compliance/whdfs15.htm (last visited October 13, 17).

7.      The Court has personal jurisdiction over Defendant because it is conducted business in Virginia, and has significant contacts with Virginia that are related to Plaintiff's claims as well as the claims of the putative Collective, including employing Virginia residents, including Plaintiff, to work in Virginia.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (3) because Defendant employed Plaintiff in this district and because a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

9.      Plaintiff LAKEIA GREEN was employed by Defendant as a Server and Bartender from approximately April 2013 through October 2014, and then from June 2015 through September 7, 2016. Plaintiff signed a consent form to join this lawsuit, which is attached as ***Exhibit 1***.

10.     Defendant is a Virginia Foreign Limited Liability Company with a principal business address located at 13873 Park Center Road, Suite 316S, Herndon, Virginia 20171. Defendant may be served on its statutory agent Corporation Service Company at Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, Virginia 23219.

11.     The members of the putative FLSA Collective are individuals who worked as Servers and/or Bartenders at Defendant's Applebee's restaurants located in Virginia, Maryland, Pennsylvania, West Virginia, and Northern North Carolina.

## FACTUAL ALLEGATIONS

### FLSA Coverage

12.     The FLSA applies in this case on an enterprise basis.

13.     Defendant's annual sales exceed $500,000.

14.     Defendant has had and presently has more than two employees engaged in interstate commerce.

15.     Plaintiff and other Servers and Bartenders engaged in interstate commerce during their employment and therefore they were/are also covered by the FLSA on an individual basis.

**<u>Defendant's Employment of Servers and Bartenders</u>**

16.     Defendant has employed and continues to employ Servers and Bartenders.

17.     During shifts worked as Servers, Plaintiff and other putative FLSA Collective members' job duties included serving food and beverages to customers, taking orders from customers, processing customers' payments, as well as sidework including cleaning, setting up, breaking down, and re-stocking the dining areas.

18.     During shifts worked as Bartenders, Plaintiff and other putative FLSA Collective members' job duties included preparing and serving beverages to customers, taking orders from customers, processing customers' payments, as well as sidework including cleaning, setting up, breaking down, and re-stocking the bar.

19.     In addition to their duties as Servers and Bartenders, Plaintiff and other members of the FLSA Collective also responsible for performing general cleaning duties such as mopping and vacuuming the floor, and for spending periods of time during her shift attending to the dishwasher and making sure dishes, glasses, kitchen equipment, and other items were rinsed and loaded in and out of the dishwasher.

20.     Plaintiff and other members of the FLSA Collective were classified as hourly-paid, non-exempt employees.

21.     Defendant paid less than the standard federal minimum wage to Plaintiff all members of the putative FLSA Collective.

22.     Defendant invoked the 'tip credit' exemption under the FLSA in a common manner with respect to all members of the putative FLSA Collective.

23.     Defendant paid Plaintiff and other members of the FLSA Collective an hourly rate of $2.13 per hour.

24.     To the extent Plaintiff and other members of the putative FLSA Collective were allowed to record hours they worked in excess of forty (40) hours in a workweek, Defendant paid them at a rate of $3.20 per hour for the overtime hours.

**Defendant's Unlawful Pay Policies**

25.     Defendant maintained a common policy of requiring Plaintiff and other members of the putative FLSA Collective to perform work off the clock at the beginning and continuing through substantial portions of their shifts.

26.     Defendant implemented this policy by directing his managers to prohibit Plaintiff and other members of the putative FLSA Collective from clocking in upon arriving at work, and directing them to wait until receiving their first customer to clock in.

27.     As a result, Plaintiff and other members of the putative FLSA Collective were deprived of pay for approximately thirty (30) minutes to three (3) hours for time spent performing pre-shift tasks such as setting up and stocking the dining area and/or bar.

28.     Defendant maintained a common policy of requiring Plaintiff and other members of the putative FLSA Collective to perform work off the clock towards the end of and after their scheduled shifts.

29.     Defendant implemented this policy by directing his managers to direct Plaintiff and other members of the putative FLSA Collective to clock out at times during their shifts and continue working.

30.     As a result, Plaintiff and other members of the putative FLSA Collective were deprived of pay for up to three to four (3-4) hours for time spent performing post-shift tasks such as breaking down and re-stocking the dining area and/or bar, as well as performing general cleaning duties such as mopping and vacuuming the floor, and attending to the dishwasher.

31.     Defendant maintained a common policy of requiring Plaintiff and other members of the putative FLSA Collective to work entire shifts clocked in under ID codes that were not their own, which resulted in Plaintiff and other members of the putative FLSA Collective not receiving hourly compensation for such hours.

32.     Defendant maintained a common policy of reducing Plaintiff's and other members of the putative FLSA Collective's hours when computing payroll, thus depriving them of hourly compensation for time they had spent working while clocked into Defendants' time-keeping system

33.     Defendant maintained a common policy of requiring Plaintiff and other members of the putative FLSA Collective to share their tips with salaried managers who had hiring and firing authority.

34.     As a result, Plaintiff and other members of the putative FLSA Collective did not retain all of their tips, despite Defendant taking a tip credit against their wages, in violation of 29 U.S.C. § 203(m).

35.     Defendants maintained a common policy of paying Plaintiff and other members of the putative FLSA Collective a reduced "tip credit" hourly rate below $7.25 per hour despite requiring them to perform the duties of non-tipped occupations, including general cleaning duties such as mopping and vacuuming the floor, and attending to the dishwasher, which were not related to their duties as Servers or Bartenders.

36.     Defendants maintained a common policy of paying Plaintiff and other members of the putative FLSA Collective a reduced "tip credit" hourly rate below $7.25 per hour despite requiring them to spend over twenty percent (20%) of their time on activities that were not themselves directed toward produce tips, including cleaning, setting up, breaking down, and re-stocking the dining and/or bar areas, general cleaning duties such as mopping and vacuuming the floor, and attending to the dishwasher.

37.     Defendants maintained a common policy of paying Plaintiff and other members of the putative FLSA Collective and overtime rate of pay of $3.20 per hour, which Defendant improperly calculated by multiplying their regular hourly rates of $2.13 per hour by 1.5.

38.     Defendant knows about the foregoing violations, but has willfully failed to provide Plaintiff and other members of the putative FLSA Collective with the wages they are owed pursuant to the FLSA.

39.     Defendant knows that it owes backpay to Plaintiff and other members of the putative FLSA Collective for wages withheld from them as a result of the policies set forth above.

**Plaintiff's Employment**

40.     Plaintiff LAKEIA GREEN was employed by Defendant as a Server and Bartender from approximately April 2013 through October 2014, and then from June 2015 through September 7, 2016.

41.     Throughout her employment with Defendant, Plaintiff worked at Defendant's Applebee's location in Williamsburg, Virginia.

42.     Defendant paid Plaintiff an hourly rate of 2.13.

43.     To the extent Defendant paid Plaintiff for hours in excess of forty (40) in a

workweek, it paid her at a rate of $3.20 per hour.

44.     In weeks in which Plaintiff's wages were subject to a valid tip credit, she was entitled to a rate of $5.76 for hours worked in excess of forty (40) in a workweek.

45.     In addition to her hourly rate, Plaintiff received tips from customers.

46.     Plaintiff typically worked 5-7 days per week.

47.     Most of the shifts Plaintiff worked were closing shifts, in which she arrived at approximately 3:30 p.m. – 4:00 p.m. and continued working until approximately 2:30 a.m. – 3:00 a.m.

48.     Plaintiff regularly worked over 40 hours per week during the applicable statutory time period.

49.     Plaintiff worked approximately fifty to seventy (50-70) hours per week, on average.

50.     On most shifts throughout her employment Plaintiff was prohibited from clocking in upon arriving at work, but was instead instructed by managers to wait for her first customer to arrive before clocking in.

51.     On such shifts, Plaintiff was deprived of approximately thirty (30) minutes to three (3) hours for time spent performing pre-shift tasks such as setting up and stocking the dining area and/or bar.

52.     On most shifts throughout her employment Plaintiff was directed by managers to clock out and continue working.

53.     On such shifts, Plaintiff was deprived of pay for up to three to four (3-4) hours for time spent performing post-shift tasks such as breaking down and re-stocking the dining area and/or bar, as well as performing general cleaning duties such as mopping and vacuuming the

floor, and attending to the dishwasher.

54.     On many shifts, Defendant required Plaintiff to work entire shifts clocked in under ID codes that were not her own, which resulted in Plaintiff not receiving hourly compensation for such hours.

55.     In many weeks, Defendant reducing Plaintiff's hours when computing payroll, thus depriving her of hourly compensation for time she had spent working while clocked into Defendants' time-keeping system.

56.     According to a report generated by Defendant, from June 3, 2015 to June 30, 2016, 394.49 hours had been adjusted on Ms. Green's time report. Of those 394.49 hours, 63.94 hours occurred during regular hours and 330.55 hours were in excess of forty (40) in a workweek.

57.     As a result of Defendant's failure to pay her for all hours worked, there were many weeks in which Plaintiff's total hour wages for regular hours amounted to less than $2.13 per hour.

58.     As a result of Defendant's failure to pay her for all hours worked, there were many weeks in which Plaintiff did not receive time-and-a-half of her regular rate of pay for all hours worked in excess of forty (40) in a workweek.

59.     At the end of each shift, Servers deposited 3% of their tips into an envelop intended for Bartenders. The envelops would be safeguarded by the Assistant Manager on duty. To claim her envelop of tips, Plaintiff had to sign a tip sheet.

60.     After many shifts, Plaintiff went to collect her tips and saw that her signature had forged on the tip sheet and there was no envelop of tips for her.

61.     Plaintiff identified approximately twenty (20) tip-out sheets on which her

signature was forged, all of which had occurred when the tip envelops were being safeguarded from Assistant Manager Heather.

62.     Upon information and belief, the tips Plaintiff was entitled to receive from Servers were confiscated and retained by Assistant Manager Heather, a salaried manager who had hiring and firing authority.

63.     During many weeks, Plaintiff was required paid an hourly rate of $2.13 per hour for performing the duties of non-tipped occupations, including general cleaning duties such as mopping and vacuuming the floor, and attending to the dishwasher, which were not related to her duties as a Server and/or Bartender.

64.     During many weeks, Plaintiff was required to spend over twenty percent (20%) of their time on activities that were not themselves directed toward produce tips, including cleaning, setting up, breaking down, and re-stocking the dining and/or bar areas, general cleaning duties such as mopping and vacuuming the floor, and attending to the dishwasher.

65.     For example, during morning shifts, which lasted from approximately 10:45 am – 4:00 pm, there was typically no dishwasher scheduled to work, and as a result Plaintiff was required to spent periods of time attending to the dishwasher and making sure dishes, glasses, kitchen equipment, and other items were rinsed and loaded in and out of the dishwasher, which frequently exceeded fifty (50) minutes over the course of her shift.

66.     During closing shifts, which lasted from approximately 3:30 p.m. – 4:00 p.m. and continued working until approximately 2:30 a.m. – 3:00 a.m., the dishwasher's shift typically ended at 10:00 p.m., and as a result Plaintiff was required to spent periods of time attending to the dishwasher and making sure dishes, glasses, kitchen equipment, and other items were rinsed and loaded in and out of the dishwasher, which frequently exceeded two (2) hours over the

course of her shift.

67.     Defendant knows that its unlawful policies resulted in Plaintiff being deprived of minimum wage and overtime compensation.

68.     In Summer 2015, Defendant terminated one of the managers that had been requiring Plaintiff and other employees to work off the clock at the Williamsburg, Virginia Applebee's.

69.      However, Plaintiff's managers continued requiring her and other Servers and Bartenders to work off the clock throughout the rest of Plaintiff's employment, which ended in September 2016, and continuing thereafter.

70.     On or around September 7, 2016, when Plaintiff stopped working for Defendant, Defendant's manager told her that Defendant would pay her $800 on the condition that she signed a release and repay a $300 tip a customer had left her.

71.     On July 19, 2017, the undersigned counsel sent a pre-litigation demand letter to Defendant.

72.     Although Defendant responded, it did not offer to pay the full amount of unpaid minimum wages and overtime compensation owed to Plaintiff.

73.     Defendant refused a proposal by Plaintiff's undersigned counsel to toll the statute of limitations governing Plaintiff's FLSA claim pending efforts to negotiate a settlement.

74.     At no time has Defendant offered Plaintiff any backpay calculated at the standard minimum wage of $7.25 per hour.

75.     At no time has Defendant offered Plaintiff any backpay for hours worked in excess of forty (40) in a workweek calculated at Plaintiff's proper tip-credit overtime rate of $5.76 per hour.

76.     At no times has Defendant offered Plaintiff liquidated damages.

## COLLECTIVE ACTION ALLEGATIONS

77.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> Any Server and/or Bartender at any Applebee's restaurant operated by Potomac Family Dining Group Operating Company LLC at any time within the period of the three (3) years prior to the commencement of this action prior to the commencement of this action through the date of judgment.

(hereinafter referred to as the "FLSA Collective").   Plaintiff reserves the right to amend this definition as necessary.

78.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

79.     With respect to the claims set herein, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).   The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

80.     The employment relationships between Defendant and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key legal issues are the same for every FLSA Collective member, to wit:

a.      Whether FLSA Collective members were required to perform work off the clock prior to the arrival of their first customer;

b.      Whether FLSA Collective members were required to clock out

continue working towards and after the end of their scheduled shifts;

c.      Whether FLSA Collective members were required to work entire shifts clocked in under ID codes that were not their own;

d.      Whether FLSA Collective members were required to share their tips with salaried managers who had hiring and firing authority;

e.      Whether FLSA Collective members were required to perform the duties of non-tipped occupations, including general cleaning duties such as mopping and vacuuming the floor, and attending to the dishwasher;

f.      Whether FLSA Collective members were required to spend over twenty percent (20%) of their time on activities that were not themselves directed toward produce tips, including cleaning, setting up, breaking down, and re-stocking the dining and/or bar areas, general cleaning duties such as mopping and vacuuming the floor, and attending to the dishwasher;

g.      Whether FLSA Collective members received a rate of pay for hours worked in excess of forty (40) in a workweek that Defendant improperly calculated by multiplying their regular hourly rates of $2.13 per hour by 1.5; and

h.      Whether Defendant's violations of the FLSA were willfull and/or done in good faith.

81.     Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include approximately five-hundred (500) members. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

### COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.
### FAILURE TO PAY MINIMUM WAGE

82.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

83.     29 U.S.C. § 206(a) provides: "Every employer shall pay to each of his employees

who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at … not less than … $7.25 an hour…."

84.     At all relevant times alleged herein, the minimum wage applicable to tipped employees has been $2.13 per hour, subject to the requirement of 29 U.S.C. § 203(m), which provides:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

85.     At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

86.     Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

87.     At all times relevant to this action, Plaintiff and other FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

88.     Plaintiff and other FLSA Collective members either (1) engaged in commerce; or

(2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

89.     Defendant has had, and continues to have, an annual gross business volume in excess of $500,000.

90.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and other FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

91.     At all times relevant to this action, Plaintiff and other FLSA Collective members were not exempt from the protections of the FLSA.

92.     At all times relevant to this action, Defendant failed to pay Plaintiff and other FLSA Collective members for all hours worked, including time spent setting up, breaking down, and re-stocking the dining area and/or bar, mopping and vacuuming the floor, and attending to the dishwasher.

93.     As a result of Defendant's policy of failing to pay Plaintiff and other FLSA Collective members for all hours worked, there were many weeks in which Plaintiff and other FLSA Collective members received an amount of pay that averaged out to less than $7.25 per hour.

94.     Defendant paid Plaintiff and other FLSA Collective members a reduced "tip credit" hourly rate despite requiring them to share portions of their tips with Defendant's management, in violation of 29 U.S.C. 203(m).

95.     Defendant paid Plaintiff and other FLSA Collective members a reduced "tip credit" hourly rate despite requiring them to perform the duties of non-tipped occupations, dish washer, which were not related to their duties as Servers or Bartenders.

96.     Defendant paid Servers and Bartenders a reduced "tip credit" hourly rate despite requiring them to spend over twenty percent (20%) of their time on activities that were not themselves directed toward producing tips, including bussing and cleaning tables and other parts of the restaurant and washing and restocking dishes and other items.

97.     Defendant's failure to pay Plaintiff and other FLSA Collective members minimum wage was knowing and willful. Defendant knew that its policies resulting in Plaintiff and FLSA Collective members not being paid for time spent setting up, breaking down, and re-stocking the dining area and/or bar, mopping and vacuuming the floor, and attending to the dishwasher, and Defendant could have properly compensated Plaintiff and other FLSA Collective members for such work, but did not. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

98.     Defendant's failure to pay Plaintiff and other FLSA Collective members minimum wage was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

99.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

100.     Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

**COUNT II**
**(29 U.S.C. § 216(b) Collective Action)**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME**

101.  Plaintiff re-alleges and incorporates all previous paragraphs herein.

102.  29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

103.  Plaintiff and other FLSA Collective Members worked many workweeks in excess of 40 hours within the last three years.

104.  At all times relevant to this action, Defendant failed to pay Plaintiff and other FLSA Collective members for all hours worked in excess of 40 in a workweek, including time spent setting up, breaking down, and re-stocking the dining area and/or bar, mopping and vacuuming the floor, and attending to the dishwasher.

105.  In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more, the time spent performing pre, mid, and post-shift activities should have been paid at the federally mandated rate of time-and-a-half (1.5) of each employee's regularly hourly wage, but Plaintiff and FLSA Collective members received no pay for such hours.

106.  Defendant's failure to pay Plaintiff and other FLSA Collective members overtime wages was knowing and willful. Defendant knew that its policies resulting in Plaintiff and FLSA Collective members not being paid for time spent setting up, breaking down, and re-stocking the dining area and/or bar, mopping and vacuuming the floor, and attending to the dishwasher, and

Defendant could have properly compensated them for such work, but did not. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

107.   Defendant improperly calculated Plaintiff's and other FLSA Collective members' by multiplying 1.5 times their regular hourly rates of $2.13, as opposed to multiplying 1.5 times the standard minimum wage of $7.25 per hour.

108.   Defendant's failure to pay Plaintiff and other FLSA Collective members overtime was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

109.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

110.   Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Lakeia Green, requests an entry of an Order the following relief:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Counts I and II);

b.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join

and participate in this lawsuit;

c.  Declaring Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

d.  Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective the full amount of damages and liquidated damages available by law;

e.  Awarding reasonable attorneys' fees and costs incurred by Plaintiff in this action as provided by statute;

f.  Awarding pre- and post-judgment interest to Plaintiff on these damages; and

g.  Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Lakeia Green, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled claims.

RESPECTFULLY SUBMITTED,


Dated: October 13, 17          By:   /s Curtis Cannon
                                     Curtis Cannon #73711
                                     **GOLDBERG FINNEGAN**
                                     8401 Colesville Rd, Suite 630
                                     Silver Spring, MD 20910
                                     T: +1 (301) 589-2999
                                     F: +1 (301) 589-2644
                                     ccannon@goldbergfinnegan.com

                                     *Counsel for Plaintiff*

                                     Nicholas Conlon (will seek admission Pro Hac Vice)
                                     Jason T. Brown (will seek admission Pro Hac Vice)
                                     **JTB LAW GROUP, LLC**
                                     155 2nd St., Suite 4
                                     Jersey City, NJ 07302
                                     T: (877) 561-0000

20

F: (855) 582-5297
nicholasconlon@jtblawgroup.com

*Lead Counsel for Plaintiff*